**Miss Ollie MATHEWS**

v.

**CLAIROL, INC., Appellant,**

v.

**Frances HILL or t/a Trudy's Beauty Salon, Gertrude Smith or t/a Trudy's Beauty Salon.**

No. 16058.

United States Court of Appeals
Third Circuit.

Argued Dec. 2, 1966.

Decided Jan. 27, 1967.

13. (1926), 272 U.S. 359, 47 S.Ct. 125, 71 L.Ed. 298.

14. Id. 272 U.S. at 364–365, 47 S.Ct. at 127.

15. (2d Cir. 1957), 241 F.2d 652, 656–657.

16. Kores Manufacturing Co., Ltd. v. Kolok, [1959] Ch. 108 (C.A.).

Charles Jay Bogdanoff, Philadelphia, Pa., (Albert C. Gekoski, Philadelphia, Pa., on the brief), for appellant.

David H. H. Felix, Philadelphia, Pa., (Felix & Felix, Philadelphia, Pa., on the brief), for appellee.

Before SMITH, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Plaintiff sued defendant Clairol, Inc. for breach of warranties and for negligence. Jurisdiction was based on diversity of citizenship, and there is no dispute that Pennsylvania law governs. Defendant joined the beauty parlor operators as third party defendants but apparently no evidence was offered against them. The trial judge took the warranty issue from the jury which rendered a $3,000 verdict against defendant on the negligence claim. Defendant appeals.

A review of the entire record showed the following: Plaintiff went to Trudy's Beauty Salon on Wednesday, March 14, 1962, to have a hair dyeing treatment. It was decided that Clairol's Hair Color Bath would be used and on that day plaintiff was given a patch test on the back of her ear and on her arm. The test here consisted of mixing a few drops of Clairol with an equal quantity of Clairoxide and then applying it to a cleaned spot on the skin behind the ear and on the arm. The defendant's instructions directed that a 24-hour period should elapse after the patch test in order to determine whether an individual was unduly sensitive to the product.

After 24 hours plaintiff returned to the salon late Thursday, March 15, 1962, and as there had been no reaction to the test she was given the treatment. She testified at trial, contrary to her deposition testimony, that her scalp started to itch either on Saturday, March 17 or on Sunday, March 18. Plaintiff complained to the beauty parlor employee on the following Tuesday and was advised to see a doctor as her condition had become more aggravated. At some later date she did see a doctor and received treatment from him for her condition. Indeed, this doctor, a dermatologist who testified as plaintiff's expert witness, later gave her a covered patch test allegedly using liquid from the same bottle as was used for plaintiff. He also gave her a test from a new bottle. He testified that she reacted positively to both tests within 12 hours. The evidence shows that plaintiff's head was very painfully inflamed and that she lost most of her hair, although the prognosis for its restoration was good.

It is clear that defendant properly preserved its rights with respect to the issues appealed. Defendant's primary argument assumes that under the evidence there could be a jury issue as to whether its instruction concerning a 24-hour waiting period after the administration of a patch test was reasonable in view of the testimony of plaintiff's expert that 72 hours was the minimum necessary waiting period. However, defendant says that the plaintiff's undisputed evidence

shows that there was no reaction up to 72 hours or indeed at any time in the places where the original patch tests were applied. Consequently, defendant contends as it did in the trial court there was no evidence before the jury which would support a finding of a causal connection between defendant's alleged negligence and the resulting injury.

It is important to emphasize again that the defendant's claimed negligence consisted solely of giving instructions with the product which provided for an unreasonably short waiting time between the administration of the patch test and the determination as to whether there was any reaction therefrom. Thus, if plaintiff's evidence fails to reveal a reaction at any time to the original patch tests there is no connection between the alleged negligence and the injury. This is so because even a waiting period of 72 hours following the patch tests would not have disclosed plaintiff's hypersensitivity.

We turn then to plaintiff's own testimony as to her experience in the patch test areas, which is quoted in the margin.[1] This testimony negates any jury issue as to whether, had the instructions provided for a 72-hour waiting period, the patch tests would have caused plaintiff to avoid the treatment and the alleged subsequent effects thereof. Nor did plaintiff introduce any proof to show that there was anything after the first 24 hours which interfered with the efficacy of the original patch tests.

Of course, evidence that plaintiff may have had a reaction apart from the patch test area within 72 hours after the hair tint was actually applied does not tend to prove the only negligence claimed by plaintiff, viz., that the patch test waiting period was unreasonably short. A reading of the trial court's charge tends to suggest that it was this evidence which was relied on to support the submission of the case to the jury.

1. "Q. Now, do you remember I asked you at the deposition in January of 1963 whether or not you had—
"Mr. Felix: You ask the question.
By Mr. Gekoski:
"Q. —whether or not you had any trouble where the patch test had been applied? At Page 16 I asked the question:
'Q. You didn't have any trouble where the patch test was applied?'
"And your answer was 'no'.
"Do you remember that?
"A. Yes, I do.
"Q. The rest of your scalp is where you had the trouble, sores, and all the things that you described; is that correct?
"A. Yes, that's right." * * *
"Q. Mrs. Mathews, you had been receiving tints to your hair for some time prior to this incident, had you not?
"A. I beg your pardon?
"Q. You had been receiving dyes to your hair or tints to your hair by other people for some time prior to March of 1962?
"A. Yes, I did.
"Q. And among those dyes was Clairol one of those products used before?
"A. I always use Clairol.
"Q. And prior to this occasion had you had any reaction to the Clairol or to any of the dyes to your hair?

"A. Never before.
"Q. Now, the day you claim that you had a test, a patch test or whatever it is called, the day before the treatment, what type of test was that?
"A. It was a test from the Clairol bottle. Miss Hill put it in the back of the ear, the 14th, on a Wednesday night.
"Q. Did she also apply a bit to your forearm?
"A. I beg your pardon?
"Q. Did she also apply a bit of the formula to your forearm?
"A. To the ear and this arm.
"Q. Did you have any reaction to that test?
"A. No.
"Q. You were able to see your arm the day after, were you not?
"A. Yes.
"Q. And did you see any type of reaction to that?
"A. Not any.
"Q. Did you have any swelling or itching or anything of that nature?
"A. No.
"Q. Was the test that you received in this case similar to the test that you had received on occasions prior to March of 1962?
"A. Yes, it were [sic]."

We conclude that the defendant's motion for a judgment of dismissal should have been granted. We need not consider other grounds raised by the defendant. The judgment of the District Court is reversed with directions to enter a judgment for the defendant.